CORTÉS ET AL., PLAINTIFFS AND APPELLANTS, *v.* DIAZ ET AL.,
DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Arecibo in an Action
of Revendication.

No. 2285.—Decided February 5, 1923.

REVENDICATION—COMMUNITY PROPERTY—PRESUMPTION—EVIDENCE—BURDEN OF
PROOF.—When either husband or wife is in possession of property without
a written title thereto, or under a title which of itself is not sufficient to
destroy the presumption that it is community property, the burden of proof
is on the person who denies the community character of the property or
affirms that it is separate property. Proof of acquisition during wedlock
is not necessary to establish a basis for the presumption that the property
is community property.

ID.—ID.—MORTGAGE—FORECLOSURE—JURISDICTION—SUMMONS.—It is necessary to
summon the heirs of the deceased wife when the husband, who was the
manager of the community property mortgaged one year before the revised
Civil Code went into effect, has been summoned as the sole defendant.

ID.—ID.—ID.—ID.—PRESCRIPTION—COLOR OF TITLE.—A deed executed at a ju-
dicial sale in the foreclosure of a mortgage under the authority of a court
without jurisdiction to make the order or decree of sale is absolutely void
and does not convey a colorable title available for ordinary prescription.

The facts are stated in the opinion.

*Messrs. J.* and *M. Tous Soto* for the plaintiff-appellants.

*Messrs. S. Largé* and *A. Lens Cuena* for the defendant-appellants.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The court below adjudged plaintiffs, the grandchildren
of a mortgagor, to be the owners of certain undivided interest in two parcels of real estate and annulled two deeds
of even date, one by the marshal to a mortgagee, purchaser

at the foreclosure sale, and another by the mortgagee to the son of the mortgagor and of his predeceased wife.

Both plaintiffs and defendants appealed. The notice filed by plaintiffs is limited to the failure to include the recovery of rents, profits and costs.

Plaintiffs have filed no brief, either as appellants or as appellees, and we need not consider the merits of the appeal taken by them.

The court below found in substance that in July of 1891 Hermógenes Díaz, the husband of Mercedes Maldonado, placed upon record, as having been acquired by purchase four years prior to the date of such entry, a possessory title to a parcel of 85 *cuerdas* described in the complaint; that thereafter, in September, 1899, Hermógenes Díaz purchased another tract containing 106 *cuerdas,* also described in the complaint and recorded in the registry of property; that in July, 1901, Hermógenes Díaz executed a mortgage upon these two properties in favor of the firm of Viuda de Martínez & Co.; that in 1902 Mercedes Maldonado died intestate; that three legitimate children, Cristóbal, Luisa and Teresa Díaz Maldonado, survived her; that two other legitimate children, Amelia and Manuel Díaz Maldonado, died before the date last mentioned, Amelia having left two legitimate children, José Félix and Carmen Cortés Díaz, and Manuel another two named Manuel and Elisa Díaz González; that in April, 1905, upon dissolution of the firm of Viuda de Martínez & Co. the mortgage above mentioned was allotted to Juana de Dios Sofía Reventós; that in June, 1907, the said assignee· instituted summary foreclosure proceedings against Hermógenes Díaz as sole defendant; that during the same month demand for payment was made upon Hermógenes Díaz; that an order of sale was obtained in October and an order of execution, together with attachment of the two properties above mentioned, in December; that on March 7th, 1908, the 31st of the same month and

the hour of 3:30 p. m. were named, without mention of the purpose for which such day and hour were fixed, and notice was published in a local newspaper, issues of March 12th, 19th and 26th, 1908; that the sale was held on March 31st and the properties were awarded to Mrs. Reventós, the only bidder; that on May 8th, 1908, the marshal of the district court, in the name of Hermógenes Díaz, conveyed to Mrs. Reventós the two properties in question for the sum of $11,000, to be credited upon the mortgage debt; that on the same day Mrs. Reventós conveyed to Cristóbal Díaz Maldonado the two properties so acquired; that the two deeds were executed before the same notary and were presented in the registry of property simultaneously in the month of February of the following year, each of these steps having been taken as though but a single contract were involved.

The brief for Cristóbal Díaz Maldonado specifies the following errors:

"1st.—The District Court of Arecibo erred in considering as partnership property of the community of Hermógenes Díaz Latorre and Mercedes Maldonado the two rural properties foreclosed as stated, thereby erroneously weighing the evidence examined.

"2nd.—Supposing the property mortgaged and foreclosed to be community property, the District Court of Arecibo erred *in holding that a demand for payment should have been made in the foreclosure proceedings on the persons who compose the succession of Mercedes Maldonado, i. e., her heirs,* deeming inadequate that personally made on Hermógenes Díaz Latorre, debtor and owner of the said properties according to the registry of property, at his residence on the mortgaged property in Ciales, the place of his domicile.

"3rd. The said district court erred in declaring void and without any effect the foreclosure proceedings in question instituted by Juana de Dios Sofía Reventós against Hermógenes Díaz Latorre, as against the plaintiffs and their supposed interest in the two properties mortgaged and so foreclosed, as well as regarding the sale and award of such properties to the foreclosing creditor Juana de Dios Sofía Reventós and her conveyance to Cristóbal Díaz Maldonado, and in finding that the notices published and bills posted

for the judicial sale of the said properties were not exhibited during the legal term, that is, for twenty days from the first publication to the day of the sale, although such notices were made and published in legal form for a greater number of days at three different public places in the judicial district of Arecibo (Utuado, Ciales and Arecibo) and from the 7th or 8th of March, 1908, to the 31st of the same month, in accordance with section 251 of the Portorican Code of Civil Procedure.

"4th.—The court below erred in adjudging plaintiffs to be the owners in common of each and every part of the two properties of 85 and 106 acres described in the second paragraph of the complaint, attributing to each a certain interest in the said properties as heir of Mercedes Maldonado.

"5th.—The court below also erred in adjudging the successive sales of the said properties null and void, the first having been made on May 8, 1908, by the marshal of the District Court of Arecibo in the name of the foreclosed debtor Hermógenes Díaz and in favor of Juana de Dios Sofía Reventós, and the second by the latter in favor of Cristóbal Díaz Maldonado, in so far as both sales affect the alleged condominium of the plaintiffs.

"6th.—The District Court of Arecibo erred in not sustaining the ordinary prescription of ten years alleged by defendant Cristóbal Díaz Maldonado as his manner of acquiring the properties purchased from Juana de Dios Sofía Reventós by a public deed of May 8, 1918, executed before notary Manuel Paz Urdaz and consequently in not giving weight to the extinguishment of every action to the contrary.

"7th.—The court below also erred because the judgment appealed from was entered without summoning or serving notice of the complaint upon the defendants Luisa Díaz Maldonado and Manuel Díaz y González, and without entering the default of defendant Teresa Díaz Maldonado, none of which three defendants appeared at the trial or otherwise in the case.

"8th.—The District Court of Arecibo erred in not adjudging the plaintiffs to pay the costs of the suit."

Counsel for mortgagee assign but a single error, which is substantially identical to the seventh assignment of Díaz Maldonado. The proposition involved is submitted without argument as self-evident and need not be separately stated or discussed.

An entry in the registry of property recites that Her-mógenes Díaz, a married man, in 1891, before a municipal court, established a possessory title to the 85-*cuerda* tract which was duly recorded. The petition alleged acquisition by purchase and possession extending over a period of four years previous to that date. There is no suggestion of any claim of separate ownership. The entry does not purport to be a record of possession as separate property.

But defendants say: *Non constat* that Mercedes Maldonado was the wife of Hermógenes Díaz, either at the time of the entry, or on the date of acquisition of the 85 *cuerdas* in 1887, or in 1889, when the larger parcel was purchased. They insist that there is no evidence that Hermógenes was married at all prior to the date of the possessory proceeding. The undisputed fact that Mercedes Maldonado, at the time of her death in 1902, was the wife of Hermógenes Díaz and the mother of his legitimate children, including defendant Cristóbal Díaz Maldonado, is brushed aside with the suggestion of possible legitimation by a deathbed marriage, or a ceremony celebrated at any time after the birth of such children.

The theory of the first assignment is that the presumption as to community property arises only upon proof of marriage at or prior to the date of acquisition.

That date is of course a vital factor in determining the actual fact as to whether or not a given parcel of real estate acquired by purchase is separate or common.

Section 1314 of the Civil Code enumerates the various kinds of separate property. Section 1316 specifies as belonging to the community, among other things, "property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only." Here three elements are involved: first, a valuable consideration; second, acquisition during marriage,

and, third, conjugal funds or property as the source of the purchase price. But section 1322 does not say that all property acquired during marriage is presumed to have been acquired for a valuable consideration, or at the expense of the partnership; nor does it state the converse of either of these propositions, although each is true as a corollary of the broad statutory definition. There is no more reason for demanding proof of any one of these elements than there is for demanding proof of either or both of the other two, as a basis for the presumption. If the three elements are conclusively shown to exist, then the property is not merely *presumed* to be ganancial: it *is* ganancial. The legal presumption is based upon the fact of possession; not upon proof that the presumption, or any one of its elements, is true in fact. What section 1322, *supra,* does say is that "all property of the marriage"—meaning all property found in the possession of either spouse— "shall be considered as partnership property until it is proven that it belongs exclusively to the husband or to the wife."

Given the fact of possession by a husband or by a wife, either without any written evidence of title or under a title that does not on its face suffice to destroy the presumption, the burden of proof is always upon him who denies the community status, or asserts the separate character of the property.

We have held quite recently, after considerable deliberation, that in a possessory title proceeding a married petitioner may show, if he can, and notwithstanding the legal presumption, a possession based upon an apparently valid claim of separate ownership, and that upon clear and convincing proof in this regard the court may determine the *prima facie* character of such possession. *Sandoval* v. *Registrar,* 30 P. R. R. 336. See also *Delgado* v. *Registrar,* Idem, 447. The evidence in the *Sandoval Case* was a deed to property acquired before marriage, in which the notary

certified to the civil status of the parties and to his personal knowledge thereof. But in the absence of any citation of authority we are not prepared to assent to the proposition that proof of acquisiton during marriage is necessary in order to establish a basis for the operation of the legal presumption as to common ownership.

And while deathbed marriages and legitimized children are not unknown, such sporadic instances are but exceptions which serve to illustrate the rule. We cannot assume with appellants that this rather remote possibility is the fact in the case at bar.

In arguing the second assignment appellants profess to accept without question the doctrine of this court in *Arvelo* v. *Banco Territorial y Agrícola,* 25 P. R. R. 677, but seek to distinguish the same by reason of the circumstance that in the case at bar the husband, record owner and mortgagor of the property in question, was alive at the time of the foreclosure proceedings, and, therefore, no demand upon the heirs of the deceased wife was necessary.

There are some phases of the instant case that were not developed so fully as they might have been by plaintiffs at the trial, and some grounds of distinction, the basis for which might have been more carefully laid by defendants below. But we have no time for the independent investigation of questions not specifically raised by appellants and sustained by sound reasoning or citation of authority. The determination of such matters may be postponed until they are properly submitted for decision.

The mere circumstance that here the husband survived the wife, while in the *Arvelo Case* the wife survived the husband, does not suffice to distinguish the instant case upon the facts. Aside from the mere matter of administration, there is little or no difference between the interest of the respective spouses in the property belonging to the conjugal partnership. It is true that at the date of the mortgage,

one year before the revision of the Civil Code, the signature and express consent of the wife was not required. But it is not true that the husband was the sole and exclusive record owner and debtor. Both the record and the mortgage showed him to be a married man, and, therefore, the property to be community property. The record owner and debtor was the conjugal partnership. And upon the death of either of the spouses an undivided one-half interest in all community property, subject only to certain contingencies that might or might not arise during the course of liquidation, vests at once in the heirs of the deceased.

The contention that the demand for payment is a mere matter of procedure, and not jurisdictional, does not demand serious discussion. An answer may be found in *Arvelo* v. *Banco, supra,* and in *López Comas* v. *Quiñones,* 30 P. R. R. 317.

Inasmuch as the publication of the notice of sale, however regular, could not supply the lack of jurisdiction over the person, the error specified in the third assignment, if committed, was harmless.

The premises involved in the 4th and 5th assignments are *sequelae* of the propositions previously submitted and do not call for further discussión.

In support of the 6th assignment some stress is laid upon the opinion written by the former Chief Justice of this Court in *Martorell* v. *Ochoa,* 25 P. R. R. 707. The gist of the text relied upon is contained in the fourth paragraph of the syllabus, which says that a deed "by which the mother, in the exercise of the *patria potestas* over her minor children, the plaintiffs, and with the authorization given on April 28, 1902, by the District Court of San Juan, which was not the district of her residence, sold the said properties to the defendant firm, is a good, true and valid title for the purposes of prescription—good, because it is a deed of sale sufficient to convey the ownership; true, because it has not

been attacked as false; valid, because it is perfect in its external requirements and even in the internal conditions which affect its life and existence, according to section 1226 of the Civil Code, for there were subject-matter of the contract, consent and consideration.''

But a careful reading of that opinion will show that the title in question was deemed to be voidable only, not absolutely void. There is no conflict whatever between the views there expressed by the Chief Justice and the proposition more definitely stated in both the concurrent and dissenting opinions filed in the same case to the effect that a deed emanating from a court without jurisdiction to enter the order or decree authorizing the sale or conveyance is an absolute nullity and gives no color of title.

In the instant case the marshal, on the face of the deed itself, appeared and acted in the name and stead of Hermógenes Díaz. The instrument does not purport to convey the right, title or interest of any other person. As to plain tiffs herein, it was not ''good because sufficient to convey the ownership.'' As to them there was no consent ''through their legal representative'' or otherwise. Because the court had never acquired jurisdiction over these plaintiffs, the order of sale, the sale itself and the deeds now claimed to constitute a ''just title'' were and are absolute nullities in so far as the undivided interest of such plaintiffs is concerned. That being true, there can be no question as to color of title.

Appellants do not discuss the element of good faith at great length, but seem to invoke only the legal presumption in connection with an alleged right to accept with closed eyes and childlike confidence any conveyance whatsoever emanating from a court of justice as the result of judicial proceedings therein. No mention is made of the question of kinship, proximity of residence or of any testimony throwing light upon the question of such knowledge as ap-

pellants may have had of facts not appearing in the registry. It is not claimed that there is no evidence, or not sufficient evidence in this regard. Beyond a bare reference to the presumption as to the existence of good faith, ignorance of such facts is not even suggested. In the circumstances and in the absence of any color of title we need not dwell on the question of good faith, although the case of *López Comas* v. *Quiñones, supra,* may have some bearing on this point.

As to the 7th assignment, it will suffice to say that the brief of appellants does not show that the persons mentioned were necessary parties or that appellants have been prejudiced in any wise by the omission, if it be an omission, of the court below to order of its own motion the issuance of a summons to defendants not already summoned or the annotation of the default of any defendant who had failed to appear after service of summons.

There is no argument under the 8th assignment and the proposition stated thereunder is based upon the false hypothesis that the court below should have dismissed the action.

The judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Franco Soto concurred.